IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MANUEL BEST, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. PWG-18-1354 |
| THOMAS WOLFE, *Acting Warden* and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Petitioner Manuel Best filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2004 convictions in the Circuit Court for Prince George's County, Maryland for three counts of attempted first-degree murder and related charges. ECF No. 1. Respondents[1] filed an Answer asserting that Mr. Best's Petition should be denied because his claims of trial court error do not present a federal question and his claims of ineffective assistance of counsel lack merit. ECF No. 10. Mr. Best filed a reply in opposition. ECF No. 11.

I find no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2021); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, Mr. Best's Petition shall be denied and a certificate of appealability shall not issue.

---

[1] According to the Department of Public Safety & Correctional Services, Mr. Best is presently confined at Jessup Correctional Institution, where the current Acting Warden is Thomas Wolfe. *See* http://www.dpscs.state.md.us/inmate/ (last visited Sept. 7, 2021). Therefore, the Clerk will be directed to amend the docket to name the proper Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (stating that "in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held").

**Background**

As recounted by the Court of Special Appeals of Maryland on direct appeal, the State's evidence at trial showed that, on August 19, 2003, Mr. Best arrived at an apartment complex on Brightseat Road in Landover, Maryland, holding a gun. *Best v. State of Maryland*, No. 1484, Sept. Term 2004, slip op. at 3-4 (Md. Ct. Spec. App., Feb. 3, 2006); ECF No. 10-1 at 92-93.[2] Mr. Best proceeded to confront Jean Brown, his former girlfriend; Donte Chouteau, Ms. Brown's boyfriend at the time; and Damian Lighty, Mr. Chouteau's friend. *Id.* Steven Harris, Ms. Brown's four-year-old son, was also present. *Id.* In the course of the confrontation, Mr. Best shot Mr. Chouteau and Mr. Lighty, and fired the gun in Ms. Brown's direction, although she was not struck. *Id.* Mr. Best fled the scene before turning himself in 19 hours later at a police station in Jacksonville, North Carolina. *Id.*

At trial, Mr. Best testified in his own defense, stating that "he took a cab to the apartment complex to retrieve his clothing and personal belongings from the apartment he had previously shared with Brown." *Id.* Mr. Best stated that when he arrived, Mr. Chouteau produced a gun and said he was going to kill Mr. Best, and the two men struggled for control of the gun. *Id.* "During the struggle, in which Lighty became involved, the gun went off several times, and both Chouteau and Lighty were shot." *Id.* Mr. Best then ran out of the apartment complex and traveled to his mother's home in Jacksonville before surrendering. *Id.*

Mr. Best was arraigned in the Circuit Court for Prince George's County, Maryland, where a jury subsequently convicted him on three counts of attempted first-degree murder, three counts of use of a handgun in the commission of a felony, and four counts of reckless endangerment. *See State of Maryland v. Best*, Case No. CT031363X (Cir. Ct. for Prince George's Cnty.), ECF No.

---

[2] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files system.

10-1 at 5-8; *see also* Pet., ECF No. 1 at 1. The jury acquitted him of attempted second-degree murder. *See* Tr. Trans., May 20, 2004, ECF No. 10-3 at 147. On August 27, 2004, Mr. Best was sentenced to three consecutive life sentences plus 23 years. Sent. Trans., Aug. 27, 2004, ECF No. 10-4 at 7-8.

On August 30, 2004, Mr. Best noted an appeal to the Court of Special Appeals of Maryland, raising the following claims:

1. Did the trial court err in accepting the jury's inconsistent verdicts, and in refusing to call the jurors' attention to the inconsistency and send them back for further deliberations, when the foreperson announced that the jury found Mr. Best not guilty of attempted second degree murder, but guilty of attempted first degree murder, as to each of the three named victims?[3]

2. Did the trial court err in refusing to give a voluntary surrender instruction after having given a flight instruction?

3. Did the trial court err in refusing to instruct the jury not to consider the fact that Mr. Best was incarcerated?

4. Did the trial court err in allowing the prosecutor to make a missing witness argument to the jury?

*See* Docket Sheet, ECF No. 10-1 at 11; Appellant's Brief, ECF No. 10-1 at 25.

On February 3, 2006, the Court of Special Appeals affirmed Mr. Best's convictions, stating in pertinent part:

> Appellant contends that the court erred by accepting inconsistent jury verdicts and by refusing to call the jurors' attention to the inconsistency and sending them back for further deliberations. Before the jury retired to deliberate, the court instructed them concerning the elements of attempted first degree murder and attempted second degree murder:
>
> > The defendant is charged with the crime of attempted murder. This charge includes attempted first degree murder, attempted second

---

[3] Respondents note that at the time Mr. Best filed his appeal, Maryland law affirmatively permitted inconsistent jury verdicts with a minor exception that Mr. Best tries to exploit. ECF No. 10 at 8 (citing ECF No. 10-1 at 29-43). In 2008, Maryland law began prohibiting legally inconsistent verdicts, as opposed to merely factually inconsistent verdicts, which remain permissible. *Price v. State*, 949 A.2d 619 (Md. 2008). The Court of Appeals of Maryland expressly made that change on a prospective basis only. *Id.* at 630.

degree murder, and attempted voluntary manslaughter. "Attempt" is a substantial step beyond mere preparation towards the commission of a crime. Attempted first degree murder is a substantial step beyond mere preparation towards the commission of murder in the first degree.

In order to convict the defendant of attempted murder in the first degree, the State must prove, 1, that the defendant took a substantial step beyond mere preparation towards the commission of murder in the first degree; 2, that the defendant had the apparent ability at that time to commit the crime of murder in the first degree; and, 3, that the defendant willfully and with premeditation and deliberation intended to kill the victim.

Ladies and gentlemen, there are three separate charges of attempted first degree murder. So when we say the victim, you're considering in one case Ms. Brown, in the other case Mr. Chouteau, and in the other case—or in the other count, Mr. Lighty.

"Willful" means that the defendant actually intended to kill the victim. "Deliberate" means that the defendant was conscious of the intent to kill. "Premeditated" means that the defendant thought about the killing and that there was enough time, though it may have only been brief, for the defendant to consider the decision whether or not to kill in enough time to weigh the reasons for and against that choice.

Attempted second degree murder is a substantial step beyond mere preparation towards the commission of murder in the second degree. In order to convict the defendant of attempted murder in the second degree, the State must prove, 1, that the defendant took a substantial step beyond mere preparation towards the commission of murder in the second degree; 2, that the defendant had the apparent ability at that time to commit the crime of murder in the second degree; and 3, that the defendant actually intended to kill the victim.

When the instructions were completed, defense counsel did not object to the instructions concerning the elements of attempted murder. After the jury retired to deliberate, it sent the court a question about how the verdicts should be rendered. The court answered the question as follows:

Your question is, "Can the defendant be found guilty on all three counts, first degree attempted murder, attempted second degree murder and voluntary manslaughter?" The answer is no.

4

> If you make a finding that the defendant is guilty of voluntary manslaughter, by definition, you have determined he is not guilty of attempted second degree murder and attempted first degree murder. But if you find -- you can find not guilty of attempted voluntary manslaughter and then go on to consider whether guilty or not of attempted second degree murder and attempted first degree murder. And, if you will recall your instructions specifically with regard to attempted first degree murder and attempted second degree murder, attempted second degree murder equals this, attempted first degree murder equals attempted second plus.
>
> The other reference I would make to you, then, having answered the specific question that you've asked me, is go back and read instruction 3:06 which you'll recall is a consideration of each count separately.

Defense counsel said that she was satisfied with the court's answer. After the jury rendered the verdicts we have recounted above, the following occurred:

> THE COURT: Does either counsel wish me to do anything with the apparent inconsistency of the attempted second and attempted first degree counts?
>
> [DEFENSE COUNSEL]: Can I think about it between now and the sentencing date?
>
> THE COURT: I have to do something if I'm going to do anything before I release the jury.
>
> [DEFENSE COUNSEL]: Well, it doesn't make any sense.
>
> [PROSECUTOR]: The law doesn't allow inconsistent verdicts. I am satisfied if they find him guilty it would merge up.
>
> THE COURT: You're not asking me to do anything?
>
> [PROSECUTOR]: I can't imagine what I can ask you to do, judge.
>
> [DEFENSE COUNSEL]: I guess you could ask them to go back and deliberate some more.
>
> THE COURT: Well, I can't do that since they've returned their verdict. I mean, from my perspective, I think they just simply misunderstood my last instruction to them. I dealt with the manslaughter and the two degrees of attempted and first degree and

5

second degree murder. So from my perspective I don't care. I'm just asking each of you for your record whether - -

[DEFENSE COUNSEL]: I don't know if the Court can strike the guilties on the first because they found him not guilty on the second.

THE COURT: I don't think I can do that either.

[DEFENSE COUNSEL]: Off the top of my head, I don't have an answer to that. They can't find him guilty if they've already found him not guilty. I don't know if they could go back and find him not guilty if they found him guilty? It doesn't make any sense.

THE COURT: Okay.

Appellant contends that "the attempted first degree murder verdicts cannot stand." He acknowledges that "inconsistent jury verdicts in a criminal case are ordinarily tolerated," but claims that the rule does not apply in this case. Relying primarily on *Bates* [*& Beharry*] *v. State*, 127 Md. App. 678, [736 A.2d 407,] *cert. denied*, 356 Md. 635[, 741 A.2d 1095 (Table)] (1999), appellant argues that the verdicts in this case "are clearly the product of misleading and confusing instructions" and that his failure to object to those instructions in the trial court therefore does not preclude him from complaining on appeal about the inconsistent verdicts. His reliance on *Bates* is misplaced.

In that case, a jury found Beharry, a co-defendant, guilty of felony murder and conspiracy to commit armed robbery, but acquitted him of first and second degree murder, armed robbery, attempted armed robbery, and use of a handgun in a crime of violence. 127 Md. App. at 684. Beharry argued on appeal that his conviction for felony murder could not stand because he was found not guilty of any underlying felony—conspiracy being only a misdemeanor. *Id.* at 692-93. Beharry pointed to the absence of a jury instruction concerning consistent verdicts, although he had not requested one, as one basis for the jury result. *Id.* at 693.

Reversing his conviction, we first pointed out that "when it is apparent from the record that the jury was misled by the court's instructions and the inconsistent verdicts clearly are not the product of lenity, mistake, or compromise on the part of the jury, the inconsistency should not be tolerated." *Id.* We referred to the question "[w]hether inconsistent verdicts can be tolerated in a felony murder case, such that a defendant may be found guilty of felony murder but not guilty of the only possible underlying felony" as one of first impression. *Id.* at 695. But we found no need to answer the question because we concluded that the inconsistency in that case was not acceptable because "the jury was misled by the court's instructions, and the inconsistent verdicts clearly [were] not the product of lenity, mistake, or compromise." *Id.* at 694-95. Referring to the trial court's instructions, we noted:

6

> As Beharry points out, the court never instructed the jury that in order to find Beharry guilty of felony murder, it had to find him guilty of armed robbery or attempted armed robbery. The court's instruction on felony murder suggested that Beharry could be found guilty if the victim was killed during an attempted armed robbery *by Bates*, so long as Beharry participated with Bates in the commission of some unspecified crime. On this instruction, the jury could have found Beharry guilty of felony murder even if it believed that he did not participate in the attempted armed robbery.

*Id.* at 696 (emphasis in original). . . . In other words, we concluded that the court had failed to instruct the jury adequately concerning the elements of felony murder. And, accordingly, overturned his felony murder conviction. *Id.* at 700.

> In this case, appellant does not claim, nor could he, that the court failed to instruct the jury adequately concerning the elements of attempted first degree murder. Appellant's complaint concerns the court's answer to the jury's question about how the verdicts should be rendered—an inartful answer that seemed to suggest that a finding of guilt on the greater inclusive offense should be rendered, in part, by a not-guilty verdict on the lesser included offense. As we have seen, defense counsel said she was satisfied with the court's answer. Because it is clear to us that the "apparent inconsistency" in the jury's verdicts concerning attempted second degree murder and attempted first degree murder was not the result of inadequate instructions concerning the elements of the greater offense, we conclude that appellant's failure to object to the court's answer to the jury's question precludes him from complaining about that answer on appeal.

*Best v. State of Maryland*, No. 1484, Sept. Term 2004, slip op. at 5-11 (Md. Ct. Spec. App., Feb. 3, 2006); ECF No. 10-1 at 94-100.

On March 17, 2006, Mr. Best sought further review in the Court of Appeals of Maryland. Pet. for Writ of Certiorari, ECF No. 10-1 at 108-30. The Court denied his petition for writ of certiorari on May 12, 2006. *Best v. State*, 898 A.2d 1004 (Table) (2006); *see also* ECF No. 10-1 at 139.

On January 29, 2007, Mr. Best filed a petition for post-conviction relief in the Circuit Court for Prince George's County pursuant to Maryland's Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. § 7-101 *et seq*. Pet. for Post-Conviction, ECF No. 10-1 at 140-48. The

state post-conviction court took no substantive action on that petition until August 3, 2015, when Mr. Best filed an amended petition, claiming:

1. Petitioner was clearly subjected to multiple varieties of double jeopardy during the course of his solitary criminal proceeding.

2. The Court was without subject matter jurisdiction to impose an unconstitutional sentence which did not comply with state law due to its obvious inconsistency.

3. The court committed a serious constitutional encroachment when it realized and recognized the existence of an inconsistent verdict and failed to take corrective action.

4. The jury instructions given were constitutionally flawed when they did not include the correct definitions of the elements of the crime charged.

5. The transposition of the order of the charged indictment to the reversed order which the charges appeared on the verdict sheet led to the double jeopardy claims of issue preclusion.

6. Defense counsel's failure to object to erroneous supplemental instructions amounted to ineffective assistance of counsel.

7. The court misapplied the law of merger when it concluded that first degree murder would merge when the petitioner was acquitted of the lesser included offense before being convicted of the greater.

8. As applied to the instant case, the court misapplied or confused "reckless" conduct arising out of a single episode to qualify as simultaneously with "attempt" crimes.

Am. Post-Conviction Pet, ECF No. 10-1 at 149-76.

After a hearing on August 20, 2015, the post-conviction court denied Mr. Best's petition by opinion and order dated November 13, 2015. Opinion & Order, ECF No. 10-1 at 177-82. The court concluded that Mr. Best's double-jeopardy claim lacked merit, in part because Mr. Best's conviction was not rendered "in violation of the Constitution of the United States[.]" *Id.* at 180. The court also rejected Mr. Best's ineffective assistance claim, finding that he failed to meet the two-prong test found in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 181. Additionally,

the post-conviction court noted that Mr. Best's allegation of error—the inconsistent verdict to which counsel failed to object—had already been fully litigated on direct appeal and could not be re-litigated during post-conviction proceedings. *Id.* at 182.

Mr. Best sought leave to appeal from this denial, raising the same claims and arguing that the post-conviction court erred "by not responsively addressing the merits of all claims presented[.]" Application for Leave to Appeal, ECF No. 10-1 at 183-84. The Court of Special Appeals directed the State to respond to only one question: "Did trial counsel's failure to object to the verdicts as to the counts of attempted first-degree murder and attempted second-degree murder, on the ground that the verdicts were impermissibly inconsistent in light of *Bates v. State*, 127 Md. App. 678 (1999), constitute ineffective assistance of counsel?" Order, ECF No. 10-1 at 187.

In response, the State argued that *Bates* did not apply because it "involved a legal impossibility—a verdict finding Beharry guilty of felony murder while acquitting him of the only underlying felony, under circumstances where the inconsistency seemed to result from an inaccurate jury instruction" on the elements of the offenses. Answer to Application, ECF No. 10-1 at 188-206. According to the State, the alleged inconsistency in Mr. Best's case "was not a logical impossibility, but a simple mistake of misdirected housekeeping [with regard to the verdict sheet]—the jury incorrectly assumed it was supposed to answer 'not guilty' to the lesser forms of attempted murder after finding him guilty of attempted first-degree murder[.]" *Id.* at 191-92. The State urged that any objection by counsel would have been meritless, and "even a sustained objection would not have altered the outcome of trial." *Id.*

On January 12, 2018, the Court of Special Appeals summarily denied the application for leave to appeal, with the mandate issuing on February 12, 2018. *Best v. State of Maryland*, ALA No. 2537, Sept. Term 2015 (Md. Ct. Spec. App., Jan. 12, 2018), ECF No. 10-1 at 207-09. Although

9

the denial effectively ended all available means of appellate review, Md. Code Ann., Cts. & Jud. Proc. § 12-202(1), Mr. Best filed a petition for a writ of certiorari with the Court of Appeals of Maryland, which was denied on April 20, 2018. *Best v. State*, 183 A.3d 157 (Table) (2018), ECF No. 10-1 at 210.

On May 3, 2018, Mr. Best filed his Petition in this Court. ECF No. 1; *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's submission is deemed to have been filed on the date it was deposited in the prison mailing system). On May 18, 2021, he amended his Petition to include the following claims:

1. Whether the Double Jeopardy Clause of the Fifth Amendment bars the convictions for attempted first-degree murder after not guilty verdicts which did not comply with state law due to its obvious inconsistency.

2. Whether the court lacked jurisdiction to impose an unconstitutional sentence that did not comply with state law.

3. Whether the trial court erred in accepting the jury's inconsistent verdicts and failing to take corrective action, therefore committing a serious constitutional encroachment, after defense counsel made known the opposition to the obvious inconsistency.

4. Did trial counsel's failure to object to the verdicts as to the counts of attempted first-degree murder and attempted second-degree murder on the grounds that the verdicts were impermissibly inconsistent in light of *Bates v. State*, 127 Md. App. 678 (1999), constitute ineffective assistance of counsel?

5. Whether trial counsel was ineffective for failing to object to erroneous supplemental instructions and request expanded instructions that more accurately explained to the jury that under Maryland law, it could not convict defendant of attempted first degree murder without having first found him guilty of the necessary lesser-included offense.

Am. Pet., ECF No. 3.

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("Act"), sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted); *see also Virginia v. LeBlanc*, 582 U.S. __, 137 S. Ct. 1726, 1728 (2017); *White v. Woodall,* 572 U.S. 415, 419 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement")). A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the

federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S.290, 301 (2010). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010) (citation omitted). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (emphasis and citation omitted).

## Analysis

Mr. Best's claims for relief can be grouped into two categories. *First*, he challenges the constitutionality of the inconsistent jury verdicts by arguing that they are barred by the Double Jeopardy Clause of the Fifth Amendment and the court lacked jurisdiction to accept them, especially after defense counsel made known its opposition to the guilty verdict for attempted first-degree murder in light of Mr. Best's acquittal on the lesser included offense of attempted second-degree murder. *Second*, Mr. Best alleges that trial counsel rendered ineffective assistance in failing to object to the verdicts, which were inconsistent in light of *Bates*; failing to object to erroneous supplemental instructions; and failing to request expanded instructions that more accurately explained to the jury that under Maryland law it could not convict him of attempted first degree murder without first finding him guilty of the lesser-included offense. I shall address Mr. Best's claims in turn.

### I. Inconsistent Verdicts

Under the Double Jeopardy Clause of the Fifth Amendment, no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The Double Jeopardy Clause prohibits 'successive prosecutions for the same offense as well as the imposition of cumulative punishments for the same offense in a single criminal trial.'" *United*

*States v. Gregory*, 639 Fed. App'x. 913, 915 (4th Cir. 2016) (quoting *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012)); *see also Green v. United States*, 355 U.S. 184, 187 (1957). "While the clause thus prohibits successive trials as well as multiple convictions for the same offense, it does not preclude[,] on the contrary, favors[,] the consolidation in a single prosecution of multiple charges arising from the same transaction or conduct, and is not ordinarily offended by the return of seemingly inconsistent verdicts on related counts." *Guichard v. Smith*, 471 F. Supp. 784, 788 (E.D.N.Y. 1979) (footnote omitted) (citing *United States v. McDaniel*, 538 F.2d 408, 414 (1976); *United States v. Klein*, 247 F.2d 908, 919 (2d Cir. 1957); *Hamling v. United States*, 418 U.S. 87, 101 (1974)).

As Respondents correctly note, in *United States v. Powell*, 469 U.S. 57 (1984), the Supreme Court recognized that an inconsistent jury verdict may stand as a possible exercise of the jury's lenity. ECF No. 10 at 23. There, the Court found "no reason to vacate [Powell's] conviction merely because the verdicts cannot rationally be reconciled." *Id.* at 69. The Court explained:

> [I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. *See Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *Kepner v. United States*, 195 U.S. 100, 130, 133, 24 S.Ct. 797, 804, 805, 49 L.Ed. 114 (1904).
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Id.* at 476-77. *Accord Bravo-Fernandez v. United States*, __ U.S. __, 137 S. Ct. 352, 357 (2016) (acknowledging the continuing validity of *Powell*).

In light of the holding in *Powell*, the post-conviction court's finding that Mr. Best's convictions did not violate principles of double jeopardy did not involve an unreasonable application of clearly established federal law as determined by the Supreme Court.

To the extent Mr. Best alleges that the trial court violated Maryland state law in accepting the jury verdicts and sentencing him accordingly, he fails to state a cognizable claim. For a claim for relief presented under § 2254 to be cognizable for review, the petitioner must assert a violation of federal law. *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); *see also Young v. Warden, Md. Penitentiary*, 383 F. Supp. 986, 1009 (D. Md. 1974) ("It is axiomatic that only the violation or denial of some federal constitutional right, and not alleged errors in the interpretation or application of state law, can be the basis for federal habeas corpus relief."), *aff'd*, 532 F.2d 753 (4th Cir. 1976). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). A violation of a state law which does not infringe upon a specific constitutional right is only cognizable in federal habeas corpus proceedings if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th Cir. 1978) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). If a claim "rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review." *Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998).

Here, Mr. Best's claims of trial court error turn on the State of Maryland's tolerance for inconsistent verdicts. Thus, he fails to raise a cognizable claim for relief through a federal habeas

petition. *See Spencer v. Murray*, 18 F.3d 237, 239 n.5 (4th Cir. 1994) (stating that a district court does not entertain a claim for federal habeas relief where no federal constitutional claim on the issue was presented on direct appeal to the state's highest court).

Accordingly, Mr. Best is not entitled to relief on his first three claims challenging the constitutionality of the inconsistent jury verdicts.

## II.     Ineffective Assistance

Next, Mr. Best alleges ineffective assistance on the part of his trial attorney. Specifically, he claims that trial counsel rendered ineffective assistance in failing to object to the verdicts, which were inconsistent in light of *Bates*, failing to object to erroneous supplemental jury instructions, and failing to request expanded instructions explaining to the jury that it could not convict him of attempted first-degree murder without having first found him guilty of attempted second-degree murder.

When a petitioner alleges a claim of ineffective assistance of counsel, he must show that counsel's performance was deficient, and the deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687. With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Id.* at 688; *see Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court explains that the "first prong sets a high bar." *Buck v. Davis*, ___ U.S. ___, 137 S.Ct. 759, 775 (2017). Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the wide range of professionally competent assistance." *Id.* (internal quotation and citation omitted). The standard for assessing such competence is "highly deferential"

and there is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669.

Second, to satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 137 S. Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The post-conviction court found that Mr. Best "failed to offer proof that but for his trial counsel's failure to request the appropriate jury instruction . . . the outcome of trial would have

been different" or that Mr. Best overcame "the strong presumption . . . that trial counsel acted within the wide range of reasonable professional assistance when she submitted the proposed jury instructions." ECF No. 10-1 at 181. The post-conviction court's findings are supported by the record and survive scrutiny.[4]

In light of this record, the post-conviction court's ruling survives scrutiny under 28 U.S.C. § 2254(d). In sum, there was no error committed by the trial court, and no constitutional error of the sort that would warrant federal habeas relief.

## Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2); *see Buck*, 137 S.Ct. at 773. The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U.S.C. § 2253(c)(2). Mr. Best may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See*

---

[4] Counsel could not have been constitutionally ineffective by failing to object to the instructions or jury verdicts pursuant to *Bates* because the objectionable inconsistency in *Bates* was not present in Mr. Best's case. As the Court of Special Appeals explained on direct appeal, "the 'apparent inconsistency' in the jury's verdicts concerning attempted second degree murder and attempted first degree murder was not the result of inadequate instructions concerning the elements of the greater offense," as was the case in *Bates*. ECF No. 10-1 at 99-100; *cf. Bates*, 736 A.2d at 415. As a consequence, the jury's verdicts would not have been different but for counsel's failure to object. The post-conviction court properly denied Mr. Best's petition based on a reasonable application of *Strickland*.

*Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## Conclusion

Having found no meritorious claim for relief, the Petition for Writ of Habeas Corpus shall be denied and a certificate of appealability will not issue.

A separate Order follows.

 9/30/2021                                                   /S/                   
Date                                                    Paul W. Grimm
                                                        United States District Judge